## Richmond

### JOHN DOE

.v.

### DOUGLAS Q. SCOTT

April 24, 1981.

Record No. 790654.

Present: All the Justices.

*Richard M. Swope (Daniel R. Warman; Williams, Worrell, Kelly & Greer,* on briefs), for appellant.

*Leonard D. Levine (James W. Brazier, Jr.; Levine & Friedman,* on brief), for appellee.

CARRICO, C. J., delivered the opinion of the Court.

On October 1, 1977, the plaintiff, Douglas Q. Scott, a Virginia Beach police officer, was injured when struck by a pickup truck as he pursued on foot a fleeing lawbreaker. Following the accident, the driver of the truck did not stop, but left the scene. In the trial of Scott's claim for damages against John Doe, the hit-run driver, the jury returned a plaintiff's verdict for $100,000.

On appeal, John Doe contends the judgment entered on the verdict is erroneous. He argues (1) Scott was guilty of contributory negligence as a matter of law, and (2) the trial court misinstructed the jury in Instruction No. 10 concerning the duties of a motorist making a left turn.

The evidence shows Scott was on duty driving a "paddy wagon" in the early morning hours of October 1, 1977. About 2:30 a.m., he observed a motorist speeding southbound on Atlantic Avenue. He stopped the speeder on the west side of Atlantic Avenue north of its intersection with 17th Street.

In this area, Atlantic Avenue is an undivided two-way street consisting of two northbound and two southbound travel lanes separated by double yellow lines, with a curb parking lane on each side of the street. Seventeenth Street joins Atlantic Avenue at a right angle from the west, forming a "T" intersection. Seventeenth Street is two-way, with lanes for eastbound and westbound traffic and a curb parking lane on each side. A signal light suspended over the intersection controls traffic on the two streets.

While Scott was writing a summons, the speeder fled on foot southbound on Atlantic Avenue. As Scott began foot-pursuit, he observed that the light at the 17th Street intersection was green for northbound-

southbound traffic and that there were no northbound vehicles in sight on Atlantic Avenue.

Although Scott looked at the light again as he ran along Atlantic Avenue, he did not observe its color. He knew the light was on a "fast cycle," that is, it turned rapidly from one color to another. He did observe what turned out to be the John Doe vehicle; it was stopped, headed east, at the traffic light on 17th Street.

As the speeder-suspect neared 17th Street, he turned eastward and crossed Atlantic Avenue. Close behind, Scott looked up as he crossed the street, and, "[w]hen [he] did, the vehicle was there." The John Doe vehicle struck Scott as it turned left from 17th Street onto Atlantic Avenue. Scott was uncertain of his location on the street when he was struck, but he believed he was "somewhere" in the area of the parking lane on the eastern side of Atlantic Avenue and "pretty close" to the pedestrian crosswalk on the northern side of the intersection.

In support of the contention that Scott was guilty of contributory negligence as a matter of law, John Doe argues that, although Scott was aware a vehicle would be turning left from 17th Street onto Atlantic Avenue, he failed to observe the color of the traffic light before crossing Atlantic Avenue, did not use the pedestrian crosswalk, and failed to see the offending vehicle until the moment before it struck him. Under these circumstances, John Doe maintains, an ordinary pedestrian would be held guilty of negligence as a matter of law.

John Doe acknowledges, however, that a police officer required to enter the street in the performance of his duties "cannot be expected to exercise the same care and keep the same lookout for cars as an ordinary pedestrian." The standard applicable to a police officer, John Doe concedes, is the same degree of care a reasonably prudent policeman would exercise under similar circumstances. Under the circumstances of this case, however, John Doe opines, any reasonably prudent policeman would have exercised greater caution for his own safety than Scott used. Scott's failure to use such greater care, John Doe concludes, constitutes negligence as a matter of law.

 We do not agree with John Doe's conclusion. The rule placing a policeman and an ordinary pedestrian in different categories is based upon sound reason—the policeman necessarily must devote his attention to his work, sometimes in disregard of his own safety, while an ordinary pedestrian may and, indeed, should give full attention to protecting himself from injury. *White* v. *Sands, Administratrix,* 197 Va. 617, 621, 90 S.E.2d 835, 838 (1956).

 The degree of concern a police officer should pay for his own

safety necessarily varies with the amount of attention he must devote to the official task at hand. *Smith* v. *Lamar,* 212 Va. 820, 823-24, 188 S.E.2d 72, 74-75 (1972). As a general rule, therefore, the question whether a policeman has exercised the proper degree of care should be left for jury determination. *Yates* v. *Potts,* 210 Va. 636, 640, 172 S.E.2d 784, 787 (1970). The present case constitutes no exception to this general rule. We hold, therefore, that the trial court did not err in submitting to the jury the question of Scott's contributory negligence.

 We take a different view, however, of the trial court's action in granting Instruction No. 10. The instruction in effect told the jury that it was the duty of John Doe in turning left from 17th Street onto Atlantic Avenue to leave the intersection in the left-hand northbound travel lane of Atlantic Avenue. The vice in this instruction is that it enunciates the wrong statutory duty. The instruction is taken from subsection (c) of Code § 46.1-215.* This subsection covers a left turn from or onto a one-way street or onto one of the roadways of a divided highway. In this situation, a motorist must leave the inter-

---

\* In pertinent part, Code § 46.1-215 reads:

The driver of a vehicle intending to turn at an intersection or other location on any highway except as prohibited by § 46.1-214 or any local ordinance enacted pursuant to § 46.1-180 shall do so as follows:

\* \* \*

(b) Left turns on two-way roadways: At any intersection where traffic is permitted to move in both directions on each roadway entering the intersection, an approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and by passing to the right of such center line where it enters the intersection and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered. Whenever practicable the left turn shall be made in that portion of the intersection to the left of the center of the intersection.

(c) Left turns on other than two-way roadways: At any intersection where traffic is restricted to one direction on one or more of the roadways, and at any crossover from one roadway of a divided highway to another roadway thereof on which traffic moves in the opposite direction the driver of a vehicle intending to turn left at any such intersection or crossover shall approach the intersection or crossover in the extreme left-hand lane lawfully available to traffic moving in the direction of travel of such vehicle and after entering the intersection or crossover the left turn shall be made so as to leave the intersection or crossover, as nearly as practicable, in the left-hand lane lawfully available to traffic moving in such direction upon the roadway being entered.

\* \* \*

section, "as nearly as practicable," in the left lane of the street or roadway onto which the left turn is made.

The intersection in question, however, does not involve one-way streets or a divided highway. Rather, the intersection involves two undivided streets upon which traffic is permitted to move in both directions, and subsection (b) of § 46.1-215, therefore, contains the applicable rule. In this situation, a motorist is not required to leave the intersection in the left lane of the street onto which the left turn is made, but is required to pass to the right of the center line of the roadway onto which the left turn is made and, "[w]henever practicable," to pass to the left of the center of the intersection.

■ The plaintiff, Scott, now concedes Instruction No. 10 erroneously defined John Doe's duty in terms of subsection (c) of § 46.1-215, rather than subsection (b). Scott argues, however, that the error is harmless. The evidence, Scott says, showed John Doe did not make his turn to the left of the center of the intersection, as required by subsection (b), "but instead slewed widely to the right of same and into the parking area," where he struck Scott. Thus, Scott concludes, even if an instruction based upon subsection (b) had been given, "there was no other proper verdict which the jury could render other than one in favor of the Plaintiff."

We do not agree that the error in granting Instruction No. 10 was harmless. The instruction permitted the jury to find John Doe guilty of negligence for breaching a duty to leave the intersection in the left-hand northbound travel lane, a duty the law does not impose upon Doe.

■ Furthermore, we do not accept Scott's argument that, even if the jury had been instructed properly, it necessarily should have found Doe guilty of negligence for failing to pass to the left of the center of the intersection. No witness testified concerning the path Doe took through the intersection. Scott asserts that Doe "slewed widely to the right" of the center of the intersection, but this assertion is based upon Scott's further claim on appeal that he was struck in the easterly parking lane of Atlantic Avenue. His testimony below did not place him exactly in the parking lane; he was uncertain where he was struck, but believed he was "somewhere" in the area of the parking lane when Doe hit him. From the evidence, the jury could have found that Scott was struck in the right-hand northbound travel lane at a point Doe might have reached after passing lawfully to the left of the center of the intersection.

For the error in granting Instruction No. 10, the judgment of the trial court will be reversed, and the case will be remanded for a new trial not inconsistent with the views expressed in this opinion.

*Reversed and remanded.*